IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| AIRTRONIC USA, INC., | ) Case No. 12-09776 |
| an Illinois corporation, | ) |
| | ) Honorable Eugene R. Wedoff |
| Debtor. | ) Hearing Date: November 28, 2012 |

FINAL ORDER ON
DEBTOR'S EMERGENCY MOTION FOR AUTHORITY
TO INCUR POST-PETITION FINANCING SECURED BY
A SENIOR LIEN ON PROPERTY OF THE ESTATE

THIS CAUSE coming on to be heard on the emergency motion of Airtronic USA, Inc., the debtor and debtor in possession herein (the "Debtor"), pursuant to §§ 364(c)(1) and 364(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure, and Local Rule 4001-2 of the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the Northern District of Illinois, for entry of an order authorizing it to incur post-petition financing of $750,000.00 under a line of credit of $2,000,000.00 (the "Bridge Loan") from Global Digital Solutions, Inc., a New Jersey corporation ("DIP Lender" or "GDSI"), with priority over any and all administrative expenses and secured by a senior lien on property of the estate (the "Motion"), notice of the final hearing having been duly given to all creditors and parties in interest, the final hearing having been first held on November 28, 2012, and continued from time to time thereafter, and the Court being fully advised in the premises;

**BASED UPON THE STIPULATION OF THE PARTIES APPEARING AT THE HEARING AND THE RECORD DEVELOPED IN THIS CASE, THE COURT DOTH FINDS as follows:**

1. This Court has jurisdiction over the Motion pursuant to §§ 157 and 1334 of the Bankruptcy Code. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2). Venue of this bankruptcy case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested by the Motion are §§ 361 and 364 of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 4001-2 of the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules").

2. On March 13, 2012 (the "Petition Date"), five of the Debtor's larger general unsecured creditors filed an involuntary petition under chapter 7 of the Bankruptcy Code. On May 16, 2012, the Debtor filed its response to the involuntary petition wherein the Debtor indicated its election to convert this case to a case under chapter 11 pursuant to § 706(a) of the Bankruptcy Code.

3. On May 17, 2012 (the "Conversion Date"), an order for relief was entered, and this case was converted to a case under chapter 11 of the Bankruptcy Code.

4. The Debtor is in possession of its property and operates its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. Pursuant to Sections 1106 and 1107 of the Bankruptcy Code, the Debtor is charged with the duty to operate its business, as a debtor in possession, in the ordinary course of business.

5. The Debtor is an electro-mechanical engineering design and manufacturing company that provides products and services for the commercial and military industries within the United States and various foreign countries. The products manufactured by the Debtor include shoulder

2

mounted missiles, rocket launchers, grenade launchers, machine guns, rifles, night vision goggles, and a managed lethality system. The Debtor is a member of the Future Warfare Group.

6. The Office of the United States Trustee ("UST") appointed the Committee on June 5, 2012. The Committee subsequently was authorized by this Court to employ counsel.

7. Throughout the administration of this case, the UST and respective counsel for Pre-Petition Lender and the Committee have been actively involved in all aspects of this case.

8. On or about December 29, 2010, the Debtor represents that it executed and delivered to Southport Bank ("Pre-Petition Lender") a promissory note in the original principal amount of $853,394.12(the "Note") pertaining to borrowings by the Debtor under that certain Business Loan Agreement (Asset Based)dated December 29, 2010 (the "Loan Agreement"). The Debtor further represents that its obligations under the Note were secured by then existing and thereafter arising property of the Debtor as more fully described in that certain Commercial Security Agreement dated December 29, 2010 (the "Security Agreement"), including, but not limited to, all of the Debtor's inventory, chattel paper, accounts, equipment and general intangibles, and all products and proceeds realized therefrom. The maturity date of the Note is December 29, 2013, which was an extension of financial accommodations previously extended by Pre-Petition Lender to the Debtor. Pre-Petition Lender contends that it perfected its security interests in the Debtor's property by filing a UCC Financing Statement with the Secretary of State of Illinois on November 5, 2009 as File Number 14750355.As of the Conversion Date, the amount due and owing to Pre-Petition Lender under the Note was approximately $515,529.76. True and correct copies of the Note, Loan Agreement and Security Agreement were previously filed herein. The amount of Pre-Petition Lender's claim (the "Existing Indebtedness"), and the validity and value

of the security interests and liens securing the payment thereof (the "Liens"), have not been determined and are subject to further order of this Court after notice and a hearing.

9. The Debtor represents that it is not aware of any other creditor of its estate holding an asserted security interest in any of its property prior to the Petition Date.

10. With Pre-Petition Lender's consent and without objection by any party in interest, thus far this Court has entered five interim orders authorizing the Debtor to use cash collateral (collectively, the "Cash Collateral Orders") in which Pre-Petition Lender has an interest. Each of the Cash Collateral Orders was based upon a 30-day budget and granted the Pre-Petition Lender with "a security interest in the Debtor's inventory and accounts receivable, and all products and proceeds thereof, acquired by the Debtor on and after May 17, 2012, to the same extent, validity and priority as held by [the Pre-Petition Lender] prior to March 13, 2012" (collectively, the "PPL Liens"). Said orders also have allowed monthly payments to be made by the Debtor to Pre-Petition Lender, which payments may be applied by Pre-Petition Lender in any manner it deems appropriate; provided, however, any such application by Pre-Petition Lender is subject to avoidance, recharacterization and reapplication upon further order of this Court after notice and a hearing.

11. The Cash Collateral Orders have enabled the Debtor to sustain its business operations. However, the use of cash collateral has not provided the Debtor with sufficient working capital to procure significant purchase orders by demonstrating that it has the means to timely manufacture and deliver weapons to governmental interests within the strict timelines imposed for such products. Consequently, the Debtor's operations have stagnated during the administration of this case as it has pursued discussions with numerous individuals and entities seeking debt and/or equity financing to shore up its operations.

12. On October 16, 2012, the Debtor filed an application with this Court pursuant to General Order No. 12-01 requesting the Motion be treated as an emergency motion. On October 17, 2012, this Court granted the Debtor's application and scheduled a hearing on the Motion for October 18, 2012 at 1:30 p.m. The Debtor thereupon on October 17, 2012 filed the Motion of record and served a copy thereof upon all parties registered to receive electronic notice of proceedings in this case, together with notice of the emergency hearing scheduled for October 18, 2012 at 1:30 p.m. Notice of the Motion and the emergency hearing thereon as actually given by the Debtor was adequate and sufficient under the circumstances presented, and no further notice of the emergency hearing was deemed necessary or required by the Court. On October 19, 2012, this Court entered an order [Docket No. 97] granting the relief requested in the Motion on an interim basis (the "Interim Order") and subject to a final hearing.

13. The Debtor further represents that despite discussions with numerous third parties, including with Pre-Petition Lender, it is unable to obtain unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense, and that the only credit it has been able to obtain subject to approval of this Court is as provided in the Bridge Loan secured by a senior lien on property of the estate as provided in the Bridge Loan documents appended to the Motion and as modified by the Order.

14. The interests of Pre-Petition Lender of its asserted lien on property of the estate on which a senior lien is proposed to be granted is adequately protected because Pre-Petition Lender consents to the entry of this Order and is being provided adequate protection payments pursuant to the "DIP Budget" (as hereinafter defined).

15. Pursuant to the Interim Order, the Debtor sent notice of the final hearing on the Motion to be held on November 28, 2012, which hearing has been continued from time to time. No objections have been filed prior to the November 28 hearing, nor have any objections been filed to entry of this Order.

**IT IS HEREBY ORDERED, DECREED AND ADJUDGED as follows:**

1. The Motion is granted on a final basis consistent with Bankruptcy Rule 4001.

2. The Debtor is authorized to borrow the sum of $750,000.00 under the Bridge Loan and to execute and deliver to DIP Lender the Debtor in Possession Note Purchase Agreement appended to the Motion as **Exhibit A**, the Security Agreement appended to the Motion as **Exhibit B**, and the 8 ¼% Secured Promissory Note appended to the Motion as **Exhibit C.** The Debtor is hereby authorized to use the funds authorized to be borrowed hereunder to pay all obligations set forth (a) in the "DIP Budget" attached to the Interim Order as **Exhibit A,** and (b) in any "Subsequent Budgets" (as that term is hereinafter defined), without further order of this Court. The monthly payments each in the amount of $15,000.00 to be made by the Debtor to Pre-Petition Lender pursuant to the DIP Budget may be applied by Pre-Petition Lender in any manner it deems appropriate; provided, however, any such application by Pre-Petition Lender is subject to avoidance, recharacterization and reapplication upon further order of this Court after notice and a hearing.

3. Based upon the extraordinary circumstances presented and the stipulation of the Debtor, DIP Lender, Pre-Petition Lender and the Committee to the entry of the Interim Order or this final order (the "Order"), pursuant to §§ 364(c)(1) and 364 (d)(1) of the Bankruptcy Code, and to secure payment of all credit extended by DIP

Lender to the Debtor pursuant to this Order subject to the terms and conditions set forth in paragraph 4 below, subject to the Carve-Out (as hereinafter defined) and excepting "Avoidance Actions" (as hereinafter defined), DIP Lender is hereby granted: (a) an administrative expense having priority over any and all other administrative expenses incurred in this case (the "Super Priority Claim"), and (b) a senior lien on all Collateral as that term is defined in paragraph 1(a) of the Debtor in Possession Note Purchase Agreement appended to the Motion as Exhibit A, which definition is hereby incorporated herein by this reference (the "Post-Petition Liens").

4. Carve-Out. Notwithstanding anything to the contrary in this Order, the Cash Collateral Orders, the Existing Indebtedness, the Liens, the PPL Liens, the Bridge Loan (including all documents evidencing the Bridge Loan) and the Post-Petition Liens and the Super Priority Claim granted in favor of DIP Lender herein shall all be subject and subordinate to the payment of the following (collectively, the "Carve-Out"): (a) compensation and reimbursement of expenses of the Debtor, the Committee and such professional persons retained by the Debtor and the Committee as authorized by order of the Court pursuant to section 327 of the Bankruptcy Code (collectively, "Professional Persons") (other than success fees, transaction fees, restructuring fees or any other similar fees of the financial advisers or consultants retained by the Debtor or the Committee) that are accrued but unpaid as of the date on which DIP Lender elects to declare all principal and interest under the Bridge Loan due and payable pursuant to paragraph 3(a)(xvi) of the 8 ¼% Secured Promissory Note appended to the Motion as Exhibit C (the "Termination Date") that are allowed by final order of the Court under sections 503(b)(2), 326, 328, 330, and/or 331 of the

Bankruptcy Code; (b) fees required to be paid to the Clerk of the Court; (c) quarterly fees required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); (d) any other actual, necessary and allowable accrued but unpaid administrative expenses incurred by the Debtor or the Committee on or prior to the Termination Date that are (i) expressly provided for in the then-applicable (or prior) DIP Budget or Subsequent Budget(s), or (ii) not expressly provided for in the then-applicable (or prior) DIP Budget or Subsequent Budget(s), but are of the same type and amount of expense provided for in such budget(s) and were not included therein solely because the invoice or bill evidencing such accrued but unpaid expenses would not have been due and payable until a future budget period; and (e) up to an additional $50,000 of (i) compensation and reimbursement of expenses of the Debtor, the Committee and Professional Persons (other than success fees, transaction fees, restructuring fees or any other similar fees of the financial advisers or consultants retained by the Debtor or the Committee) that are allowed by final order of the Court under sections 503(b)(2), 326, 328, 330, and/or 331 of the Bankruptcy Code that accrue after the Termination Date necessary to enable the Debtor to wind down the affairs of Debtor's estate after the Termination Date and (ii) other actual, necessary administrative expenses incurred by the Debtor after the Termination Date that are incidental to the winding down of the affairs of Debtor's estate, provided, however, that the Carve-Out shall not include, apply to or be available for any fees and expenses of either Debtor's or the Committee's professionals that represent services or were incurred in objecting to or contesting in any manner, or raising any defenses to, the amount, validity, perfection, priority, extent or enforceability of the obligations arising under the

Obligations (as that term is defined in paragraph 1(a) of the Debtor in Possession Note Purchase Agreement appended to the Motion as Exhibit A, which definition is hereby incorporated herein by this reference) or the Post-Petition Liens securing such obligations, or in the prosecution of actions, claims or causes of action against the DIP Lender relating to any Loan Document (as that term is defined in paragraph 1(a) of the Debtor in Possession Note Purchase Agreement appended to the Motion as Exhibit A, which definition is hereby incorporated herein by this reference).

5. <u>Conflicts</u>. To the extent of any conflicts exist between the terms of this Order on the one hand and the Cash Collateral Orders, the Interim Order, the Debtor in Possession Note Purchase Agreement, the Security Agreement and the 8 ¼% Secured Promissory Note on the other hand, then the terms of this Order shall control.

6. <u>Use of Cash Collateral Budget</u>. The Debtor is hereby authorized to use "Cash Collateral" solely in accordance with and pursuant to the DIP Budget and in any subsequent budgets approved by GDSI, Pre-Petition Lender and the Committee (the "<u>Subsequent Budgets</u>"). For the purposes of this Order, "Cash Collateral" shall mean "cash collateral" as defined in § 363(a) of the Bankruptcy Code and shall include and consist of, without limitation, all of the respective property and assets of the Debtor that constitutes cash collateral in which DIP Lender and Pre-Petition Lender have an interest. If and to the extent the Debtor desires to use cash collateral for costs and expenses not set forth in the DIP Budget and/or to borrow additional sums under the Bridge Loan with DIP Lender's consent, then the Debtor shall serve upon GDSI, Pre-Petition Lender, the Committee and the UST (collectively, the "Notice Parties") a Subsequent Budget setting forth the additional costs and expenses the Debtor desires

to pay with the use of cash collateral, or the additional amount its desires to borrow under the Bridge Loan together with the proposed use thereof. If none of the Notice Parties serves upon the Debtor and each of the other Notice Parties an objection to the Debtor's proposed use of cash collateral and/or the borrowing of additional sums under the Bridge Loan within ten (10) days of receipt of the Subsequent Budget, then the Debtor shall be entitled to comply with such Subsequent Budget without further order of this Court. If an objection to the Subsequent Budget is served by a Notice Party in accordance with this paragraph, then the Debtor shall be prohibited from complying with such Subsequent Budget in the absence of an order of this Court after notice and a hearing.

7. <u>Preservation of Avoidance Actions for the Estate</u>. Notwithstanding anything to the contrary contained in this Order, the Debtor in Possession Note Purchase Agreement, Security Agreement and 8 ¼% Secured Promissory Note, neither GDSI, the Pre-Prepetition Lender, nor any other person or entity is granted a lien on or interest in any claim or causes of action for avoidance arising under Chapter 5 of the Bankruptcy Code (the "Avoidance Actions") pursuant to the terms of this Order, nor shall GDSI or the Prepetition Lender be entitled to payment of the Existing Indebtedness, the Obligations, the DIP Loan or any claim related thereto (including without limitation, the Super Priority Claim) from the Avoidance Actions or the proceeds thereof.

DATED: December 26, 2012                ENTER:

 

_____
Eugene R. Wedoff
United States Bankruptcy Judge