### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| AIRTRONIC USA, INC., | ) Case No. 12-09776 |
| an Illinois corporation, | ) |
| | ) Honorable Eugene R. Wedoff |
| Debtor. | ) |

### NOTICE OF MOTION

TO: SEE ATTACHED SERVICE LIST

PLEASE TAKE NOTICE that on **Tuesday, July 8, 2014, at 10:00 a.m.**, or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Eugene R. Wedoff, United States Bankruptcy Judge for the Northern District of Illinois, or such other judge as may be sitting in his place and stead, in Courtroom 744, Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, and then and there present **First and Final Application of Swanson, Martin & Bell, LLP for Final Allowance of Compensation for Services Rendered and Costs Incurred as Counsel for the Debtor in Possession**, a true and correct copy of which is herewith served upon you.

Dated: June 13, 2014                                   Respectfully submitted,

 

                                                    **SWANSON, MARTIN & BELL, LLP**

                                                    By:  */s/ Charles S. Stahl, Jr.*
                                                           One of its partners

| | |
|---|---|
| Charles S. Stahl, Jr. (I.D. No. 2699915) | Thomas B. Fullerton (I.D. No. 6296539) |
| Swanson, Martin & Bell, LLP | Swanson, Martin & Bell, LLP |
| 2525 Cabot Drive, Suite 204 | 330 North Wabash Avenue, Suite 3300 |
| Lisle, Illinois 60532 | Chicago, IL |
| (630) 799-6990 | (312) 321-9100 |
| Fax: (630) 799-6901 | Fax: (312) 321-0990 |
| cstahl@smbtrials.com | tfullerton@smbtrials.com |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| AIRTRONIC USA, INC., | ) Case No. 12-09776 |
| an Illinois corporation, | ) |
| | ) Honorable Eugene R. Wedoff |
| Debtor. | ) Hearing Date: July 8, 2014 |
| | ) Hearing Time: 10:00 a.m. |

**FIRST AND FINAL APPLICATION OF SWANSON, MARTIN & BELL, LLP
FOR FINAL ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
AND COSTS INCURRED AS COUNSEL FOR THE DEBTOR IN POSSESSION**

NOW COMES the law firm Swanson, Martin & Bell, LLP ("Applicant"), counsel for Airtronic USA, Inc. (the "Debtor"), the debtor and debtor in possession in this case, and for its first and final application for a final allowance of compensation for services rendered and costs and expenses incurred during the period from May 16, 2012 through April 30, 2014 (the "Application Period"), states as follows:

## SUMMARY

1. By this Application, Applicant requests final approval of (i) $596,244.00 in fees for services rendered on behalf of the Debtor during the Application Period; and (ii) $7,154.44 in expenses incurred during the Application Period. The fees and expenses incurred during the Application Period total $ 603,398.44.

2. On August 28, 2012, this Court entered its Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals and Committee Members [Dkt. No. 71], as modified [Dkt. No. 134] (the "Payment Procedures Order"). Pursuant to the Payment Procedures Order, Applicant has been paid the aggregate sum of $502,883.03. Accordingly, Applicant

1

further seeks entry of an order authorizing the Debtor, as reorganized, to pay Applicant the outstanding balance due in the amount of $100,515.41.

## JURISDICTION

3. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these proceedings is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is 11 U.S.C. §§ 105, 330 and 331 and Rule 2016 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

4. Due to the length of the Application Period, a brief summary of the administration of this case is set forth below to enable the reader to better assess the reasonableness of the compensation requested herein.

### A. The Nature of the Debtor's Business

5. Airtronic USA, Inc. was founded in 1993 and falls into the Standard Industrial Classification Code of 3484, Manufacturer of Small Arms. It also distributes weapons and ammunition manufactured by other companies like FN for assault rifles, Manroy for .50 cal. machine guns, and RomArms for RPG-7 rockets. The Debtor focuses on legacy weapon systems, such as the M203 Grenade Launcher (for which it was awarded a five-year exclusive supplier contract by the United States Department of Defense), the .50 cal. Machine Gun, and the MK 19 Grenade Machine Gun. The Debtor broadened its focus to include adding capability to the AK assault rifle and improving the RPG-7 rocket launcher.

6. The Debtor also sells weapons to friendly foreign militaries both directly and through Foreign Military Sales and Foreign Military Funding awards extended by the United States Department of Defense.

7. The Debtor is a member of the National Small Arms Technology Consortium and serves on the Machine Gun and Grenade Launcher subcommittee. The Debtor was selected as integrator of the M203 Managed Lethality Grenade Launcher System, a system that adds nonlethal capability to a lethal weapon a soldier is already carrying.

### B. The Commencement of this Case and Early Proceedings

8. On March 13, 2012 (the "Petition Date"), five of the larger general unsecured creditors of the Debtor filed an involuntary petition against the Debtor under chapter 7 of the Bankruptcy Code. On May 16, 2012, the Debtor filed its response to the involuntary petition wherein the Debtor indicated its election to convert the case to a case under chapter 11 pursuant to § 706(a) of the Bankruptcy Code. On May 17, 2012 (the "Conversion Date"), an order for relief was entered, and this case was converted to a case under chapter 11 of the Bankruptcy Code. From and after the Conversion Date, the Debtor remained in possession of its property and conducted its affairs as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

9. On June 27, 2012, the Office of the United States Trustee (the "UST") conducted a meeting pursuant to § 341 of the Bankruptcy Code, and, in connection therewith, appointed seven persons to serve on an Official Committee of Unsecured Creditors (the "Committee").

### C. Cash Collateral Orders

10. As of the Conversion Date, Southport Bank held a security interest in substantially all, if not all, of the Debtor's property, including inventory, accounts receivable and cash receipts, by virtue of security interests granted to it in consideration of secured loans and other financial accommodations it extended to the Debtor prior to the Petition Date. On June 6, 2012; July 9, 2012; July 25, 2012; August 15, 2012; and September 13, 2012, this Court entered orders authorizing the Debtor to use cash collateral in which Southport Bank held an interest. These orders enabled the Debtor to continue operating its business in the ordinary course of business. The orders also granted Southport Bank certain liens and security interests in property acquired by the Debtor after the Petition Date, approved specific budgets detailing the purposes for which the Debtor could use the cash receipts, and directed the Debtor to pay Southport Bank stipulated monthly payments to assure that Southport Bank's interests were adequately protected. The Debtor complied with all of these orders.

### D. The Merger Agreement with GDSI and the DIP Bridge Loans

11. Prior to the Petition Date, and continuing after the Conversion Date, the Debtor sought debt and/or equity financing in order to rehabilitate its financial affairs.

12. In or about July 2012, the Debtor was introduced to Global Digital Solutions, Inc. ("GDSI"), which expressed an interest in pursuing discussions. These discussions culminated in a letter of intent being executed among the parties in August 2012 pertaining to a debtor in possession bridge loan and a contemplated merger upon confirmation of a plan of reorganization.

13. The Debtor and GDSI finalized the terms and conditions of a merger agreement in October 2012 (as subsequently modified, the "Merger Agreement"). In furtherance thereof, on

4

October 17, 2012, the Debtor filed an emergency motion with this Court requesting approval of a DIP bridge loan pursuant to which, among other thing, the Debtor would be authorized to borrow up to $2 million from GDSI, with $750,000.00 to be funded on or before October 23, 2012. In consideration thereof, it was proposed that GDSI would be granted a senior lien and security interest in the Debtor's property, and the liens and security interests held by Southport Bank would be subordinated to the liens and security interests sought to be granted to GDSI. After extensive negotiations, both Southport Bank and the Committee consented to all of the relief requested by the Debtor. On October 19, 2012, this Court entered an agreed order granting the Debtor's motion.

14. GDSI was unable to commence funding the DIP bridge loan until late January 2013. This resulted in additional negotiations among the parties in interest. On March 11, 2013, the Debtor filed a motion requesting this Court's approval of a modified DIP bridge loan agreement. On March 15, 2013, this Court entered its order approving the modified agreement pursuant to which the Debtor was authorized to borrow up to $700,000.00 in accordance with a 210-day budget.

15. Thereafter, the Debtor received purchase orders aggregating in excess of $900,000. However, the cost to complete these orders was not encompassed by the 210-day budget approved by this Court. Consequently, after further negotiations, the Debtor filed two additional motions with this Court requesting authority to increase its line of credit under the DIP bridge loan by $550,000.00. In June and August, 2013, this Court entered two additional DIP bridge loan orders granting the Debtor's motions, increasing the DIP bridge loan to a maximum of $1.25 million and approving a 270-day budget.

**E. The GDSI-Sponsored Plan of Reorganization**

16. On or about May 1, 2013, GDSI formulated and circulated a terms sheet containing the terms of a plan of reorganization it would support. This led to a meeting among the Debtor, GDSI and the Committee on May 7, 2013.

17. On June 10, 2013, the Debtor filed a plan of reorganization and an accompanying disclosure statement which it believed had the support of both the Committee and Southport Bank. Thereafter, following further discussions with various parties in interest and specific comments from the UST, the Committee, Southport Bank and GDSI, on August 21, 2013, the Debtor filed an amended plan of reorganization (the "GDSI Plan").

18. On October 2, 2013, this Court entered its order approving the disclosure statement and confirming the GDSI Plan.

19. The GDSI Plan was not substantially consummated. Pursuant to the terms of the GDSI Plan, on December 2, 2013, the property that had vested in the reorganized debtor revested in the bankruptcy estate. On December 3, 2013, the Debtor formally terminated the Merger Agreement.

20. GDSI filed a motion requesting an order compelling the Debtor to consummate the Merger Agreement. That motion was denied. GDSI then filed an adversary proceeding against the Debtor and another motion requesting an order compelling the Debtor to consummate the Merger Agreement. That motion also was denied.

**F. The Debtor's Pursuit of Additional Financing**

21. Prior to confirmation of the GDSI Plan, the Debtor had sought additional working capital financing from one or more third parties to enable its performance under open and

expected purchase orders to be timely completed. This effort continued after confirmation of the GDSI Plan.

22. In late October 2013, the Debtor was introduced to Onset Capital Partners, LLC ("Onset"). Onset thereafter undertook to assist the Debtor in procuring a line of credit or another form of debt financing. Several weeks later after the Merger Agreement had been terminated, Onset broadened its search to include a possible equity infusion to enable the Debtor to propose a modified plan of reorganization.

23. Finally, on January 27, 2014, Onset introduced the Debtor to RPG Funding Investors, LLC ("RPG"), the first party identified by Onset that was willing to negotiate a pre-confirmation arrangement with the Debtor,.

**G. The RPG-Sponsored Plan of Reorganization**

24. On March 31, 2014, the Debtor filed its First Amended Modified Plan of Reorganization (the "Modified RPG Plan"), which was supported by RPG. On April 2, 2014, the Debtor filed an amended supplement to its previously approved disclosure statement.

25. The Modified RPG Plan was predicated upon an equity infusion of $4 million by RPG in the reorganized debtor. In consideration thereof, RPG or its designees was to be issued 100% of the authorized common stock in the reorganized debtor.

26. Commencing in November 2013, several contested matters were brought before the Court. Among them, GDSI filed motions (a) to convert this case to a case under chapter 7, (b) for the appointment of a trustee, and (c) for entry of a rule to show cause. Although GDSI was not granted the relief it requested, its objection to the Debtor's motion for authority to use cash collateral was sustained.

27. Onset filed an adversary proceeding seeking relief from the Debtor, RPG and their respective principals, as well as a competing plan of reorganization. Onset subsequently withdrew its competing plan.

28. The issues among the parties were eventually resolved. On April 28, 2014, this Court entered its order approving the disclosure materials and confirming the Modified RPG Plan.

29. The Modified RPG Plan has been substantially consummated.

## COMPLIANCE WITH APPLICABLE STANDARDS

30. In preparing this Application and supporting documentation, Applicant has complied with the standards and requirements set forth in In re Wildman, 72 B.R. 700 (Bankr. N.D. Ill. 1987), and other applicable precedent and rules. Specifically, all time for professional services rendered has been recorded in increments of one-tenth of an hour, and all time entries which include the performance of more than one task are not "lumped" entries and indicate the amount of time expended on each task. In addition, Counsel has complied with the requirements set forth in the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330, promulgated by the United States Department of Justice on March 22, 1995.

## PROFESSIONAL SERVICES RENDERED AND COSTS INCURRED

31. Applicant has segregated its time for professional services rendered for and on behalf of the Debtor during the Application Period into the following 13 categories:

   a. **Use of Cash Collateral (see Exhibit A):** All time for services rendered in this category pertains to assisting the Debtor in obtaining approval of this Court during the

earlier phases of this case to use cash collateral on a monthly basis in the operation of its business. Thereafter, extensive services were rendered in connection with the DIP bridge loans extended by GDSI and the Committee's motion seeking an order to compel GDSI to fund the initial DIP bridge loan. Applicant also prosecuted the Debtor's motion for authority to use cash collateral after the Merger Agreement had been terminated. Applicant's services included conferring with the Debtor's management regarding monthly budgets for the Debtor's operations; conferring with counsel for the UST, the Committee, Southport Bank, GDSI and RPG with respect thereto; and preparing appropriate motions and orders in respect thereto and participating in hearings thereon. **Applicant expended a total of 278.2 hours in this category, representing fees for services rendered of $129,930.00.**

b. **Executory Contracts/Unexpired Leases (see Exhibit B):** All time for services rendered in this category pertains to analyzing the Debtor's executory contracts and unexpired leases, counseling the Debtor's management in respect thereto, participating in hearings with respect thereto, reviewing correspondence to the Debtor and GDSI from the Defense Contract Management Agency relating to the possible need for a novation of the Debtor's government contracts under the circumstances presented, and obtaining this Court's approval of a restructured lease arrangement with the Debtor's principal landlord. **Applicant expended a total of 5.5 hours in this category, representing fees for services rendered of $2,667.50.**

c. **Employment and Compensation of Applicant (see Exhibit C):** All time for services rendered in this category pertains to preparing and presenting to the Court appropriate papers and a proposed order authorizing the Debtor's employment of

9

Applicant as its bankruptcy counsel, complying with the Court's Payment Procedures Order, addressing GDSI's request that Applicant discount its fees by 20%, and responding to two objections filed by GDSI to documents circulated by Applicant in accordance with the Payment Procedures Order. **Applicant expended a total of 15.3 hours in this category, representing fees for services rendered of $7,140.50.**

 d. **Employment and Compensation of Other Professionals (see Exhibit D):** All time for services rendered in this category pertains to conferring with the Debtor's management in respect to the Committee's employment of professionals, reviewing with the Debtor billing statements circulated by Committee counsel pursuant to the Payment Procedures Order, and preparing and presenting appropriate papers and proposed orders authorizing the Debtor to employ ordinary course professionals. **Applicant expended a total of 32.5 hours in this category, representing fees for services rendered of $10,329.00.**

 e. **Southport Bank (see Exhibit E):** All time for services rendered in this category pertains to conferring with the Debtor's management in respect to the Debtor's pre-petition relationship with Southport Bank and reviewing all loan documents and financing statements relating thereto. **Applicant expended a total of 2.2 hours in this category, representing fees for services rendered of $1,067.00.**

 f. **The Committee (see Exhibit F):** All time for services rendered in this category pertains to reviewing and furnishing documents requested by the Committee in aid of its investigation of the Debtor's financial affairs and conferring with Committee

counsel with respect thereto. **Applicant expended a total of 18.4 hours in this category, representing fees for services rendered of $8,553.00.**

g. **Claims Analysis (see Exhibit G):** All time for services rendered in this category pertains to preparing and presenting appropriate papers and a proposed order fixing a bar date for the filing of proofs of claim; analyzing proofs of claim filed in this case and conferring with the Debtor's management with respect thereto; communications with creditors regarding the bar date; reviewing the background and pleadings relating to pre-petition litigation among the Debtor and a creditor, and conducting legal research, preparing and presenting an objection to the creditor's asserted claim, and obtaining an order reducing the claim from over $1 million to less than $200,000; and commencing a review and analysis of GDSI's motion for allowance of an administrative claim, its proof of claim, and amendments thereto. **Applicant expended a total of 40.3 hours in this category, representing fees for services rendered of $16,260.50.**

h. **Plan of Reorganization (see Exhibit H):** All time for services rendered in this category pertains to counseling the Debtor's management with respect to the classification and treatment of claims under a plan; analyzing the Debtor's schedules and the claims register to formulate a proper classification of claims under a plan; drafting a plan of reorganization and amended plan of reorganization supported by GDSI, and drafting a disclosure statement and an amended disclosure statement in connection therewith; participating in hearings with respect thereto; participation in protracted negotiations with GDSI regarding the Merger Agreement and revisions thereto; preparations for the closing of the Merger Agreement; drafting a modified plan and an amended modified plan supported by RPG, and drafting supplemental disclosure

11

materials in connection therewith; negotiations with RPG in respect thereto; participating in hearings with respect thereto; coordinating with the Committee various scheduling orders entered by the Court; addressing GDSI's objections to confirmation of the Modified RPG Plan; reviewing Onset's competing plan; assisting the Debtor in complying with Onset's discovery requests; preparing and presenting appropriate papers and a proposed order scheduling proceedings on the estimation of Onset's asserted claim; preparing and filing ballot reports as required; and negotiations with the various parties in interest resulting in the consensual confirmation of the Modified RPG Plan. **Applicant expended a total of 384.1 hours in this category, representing fees for services rendered of $180,624.50.**

 i. **Disclosure Statement (see Exhibit I):** All time for services rendered in this category pertains to preparing a disclosure statement and an amended disclosure statement in connection with the GDSI-Sponsored Plan; drafting supplemental disclosure materials in connection with the Modified RPG Plan; and obtaining this Court's approval of the adequacy of these documents. **Applicant expended a total of 47.7 hours in this category, representing fees for services rendered of $23,134.50.**

 j. **Chapter 11 Administration (see Exhibit J):** All time for services rendered in this category pertains to assisting the Debtor in fulfilling its duties and obligations under the Bankruptcy Code in respect to the general administration of this case. More specifically, services rendered included conferences with the Debtor concerning the operating instructions applicable to this case and the necessary steps required to comply therewith; assisting the Debtor in the preparation of its schedules and statement of financial affairs; reviewing and assisting the Debtor in the preparation of its monthly

operating reports; representing the Debtor at the § 341 meeting conducted by the UST; preparing and filing objections and successfully representing the Debtor at contested hearings requesting the conversion or dismissal of the chapter 11 case, the appointment of a trustee, and the issuance of a rule to show cause; conferences with the Debtor concerning its business affairs and prospects; and other miscellaneous tasks that were not sufficiently time-consuming to warrant separate classification. **Applicant expended a total of 95.1 hours in this category, representing fees for services rendered of $44,580.00.**

    k. **GDSI Litigation (see Exhibit K):** All time for services rendered in this category pertains to conferences with the Debtor's management concerning the status and strategy for defending against the adversary proceeding filed by GDSI; legal research regarding the same; preparing and filing papers in response to the adversary complaint; successfully objecting to GDSI's motion for leave to amend the adversary complaint; successfully objecting to GDSI's motion to compel the closing of the Merger Agreement; participating in court hearings in respect to all of the foregoing; and seeking the transfer of a lawsuit filed by GDSI in Florida against the Debtor's President so that it could be consolidated with the contested matters before this Court. **Applicant expended a total of 285.6 hours in this category, representing fees for services rendered of $92,730.50.**

    l. **Post-Confirmation Matters (see Exhibit L):** All time for services rendered in this category pertains to conferring with the Debtor's management regarding confirmation of the GDSI-Sponsored Plan and a closing of the Merger Agreement; reviewing with the Debtor's management the revisions sought by GDSI to the Court-approved Merger Agreement; analyzing what capital contribution if any GDSI would

make available to the Debtor if the Merger Agreement was consummated; reviewing GDSI's SEC filings relative thereto; reviewing closing documents prepared by GDSI's counsel; reviewing press releases issued by GDSI regarding the Debtor; reviewing lawsuits filed against GDSI's principals; reviewing GDSI's request that certain conditions precedent be waived by the Debtor; and analyzing the Debtor's right to terminate the Merger Agreement. **Applicant expended a total of 78.7 hours in this category, representing fees for services rendered of $36,548.00.**

    m. **New Credit Facility (see Exhibit M):** All time for services rendered in this category pertains to assisting the Debtor in its efforts to procure additional working capital financing; cooperating with Onset in respect thereto; negotiating a capital contribution by RPG; and preparation of documents relating thereto. **Applicant expended a total of 105.1 hours in this category, representing fees for services rendered of $42,679.00.**

    32. Attached hereto as Exhibits A through M are the detailed time records of Counsel for the 13 categories of services described above. In rendering the above-described services, Applicant expended a total of 1,388.7 hours during the Application Period. Such time expenditures were actual and necessary in order for Applicant to discharge its duties and obligations to the Debtor, this Court and the estate. Applying Applicant's usual and customary billing rates to the time expended by Applicant during the Application Period, the aggregate sum of legal fees for services rendered equals $596,244.00.

    33. A summary by category of the services rendered is set forth below.

| CATEGORY | HOURS | FEES |
|---|---|---|
| Use of Cash Collateral | 278.2 | $129,930.00 |
| Contracts/Unexpired Leases | 5.5 | 2,667.50 |
| Employment of Applicant | 15.3 | 7,140.50 |
| Employment of Others | 32.5 | 10,329.00 |
| Southport Bank | 2.2 | 1,067.00 |
| Committee | 18.4 | 8,553.00 |
| Claims Analysis | 40.3 | 16,260.50 |
| Plan of Reorganization | 384.1 | 180,624.50 |
| Disclosure Statement | 47.7 | 23,134.50 |
| Ch. 11 Administration | 95.1 | 44,580.00 |
| GDSI Litigation | 285.6 | 92,730.50 |
| Post-Confirmation Matters | 78.7 | 36,548.00 |
| New Credit Facility | 105.1 | 42,679.00 |
| **TOTAL** | 1,388.7 | $596,244.00 |

34. The names, positions and hourly billing rates of the attorneys with Applicant who rendered the majority of the services described herein are as follows:

| NAME | POSITION | BILLING RATE[1] |
|---|---|---|
| Charles S. Stahl, Jr. | Partner | $485.00 |
| Thomas J. Verticchio | Partner | $425.00 |
| Amy Knapp | Of Counsel | $285.00 |
| Troy M. Sphar | Associate | $270.00 |
| Thomas B. Fullerton | Associate | $220.00 |

Biographies of the attorneys listed above are attached hereto as Exhibit N.

35. Applicant incurred actual and necessary costs and expenses in connection with its employment during the Application Period in the aggregate sum of $7,154.44 for a variety of items, including filing fees, Pacer service charges, Lexus research charges, outside photocopying

---

[1] Applicant reviews and revises as appropriate the hourly billing rates of each of its attorneys on an annual basis. Despite this policy, Applicant chose to allow all services rendered during the Application Period to be based upon the respective attorneys' billing rates in effect in 2012.

services, postage, transportation expenses, and other similar costs. An itemization of all such expenses is attached hereto as Exhibit O.

### **CONCLUSION AND RELIEF REQUESTED**

36. Applicant respectfully submits that all services rendered were reasonably likely to benefit the Debtor's estate and were necessary to the administration of this case. Applicant has not entered into any agreement regarding the allowance, payment or sharing of any compensation which may be allowed to any professional employed in this case, or into any other agreement prohibited under the Bankruptcy Code or applicable law.

WHEREFORE, Applicant respectfully requests entry of an order (a) allowing it final compensation for services rendered in the amount of $596,244.00, for expenses incurred in the amount of $7,154.44, for an aggregate final allowance of compensation of $603,398.44, (b) authorizing the reorganized debtor to pay Applicant the sum of $100,515.41, and (c) awarding Applicant such further and additional relief as may be appropriate and just under the circumstances.

Dated: June 13, 2014                          Respectfully submitted,

                                              SWANSON, MARTIN & BELL, LLP

                                              By: /s/ Charles S. Stahl, Jr.
                                                  Counsel for the Debtor

Charles S. Stahl, Jr. (I.D. No. 2699915)
Swanson, Martin & Bell, LLP
2525 Cabot Drive, Suite 204
Lisle, Illinois 60532
(630) 799-6990
Fax: (630) 799-6901
cstahl@smbtrials.com

Thomas J. Verticchio (I.D. No. 6190501)
Amy Knapp (I.D. No. 6271655)
Troy M. Sphar (I.D. No. 6278497)
Thomas B. Fullerton (I.D. No. 6296539)
Swanson, Martin & Bell, LLP
330 North Wabash Avenue, Suite 3300
Chicago, IL 60611
(312) 321-9100
Fax: (312) 321-0990
tverticchio@smbtrials.com
aknapp@smbtrials.com
tsphar@smbtrials.com
tfullerton@smbtrials.com